UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

MARIUM NASSER,

         Debtor.

------------------------------------------------------------x
MARIUM NASSER,

         Plaintiff,

   -against-

JP MORGAN CHASE BANK, N.A.,
U.S. BANK NATIONAL ASSOCIATION, and
CHASE HOME FINANCE, LLC,

         Defendants.
------------------------------------------------------------x

Chapter 13
Case No. 17-40254-nhl

Adv. Pro. No. 17-01175-nhl

## MEMORANDUM AND ORDER DISMISSING
## COMPLAINT PURSUANT TO RULE 12(B)(6)

UPON the complaint (the "Complaint") of Mariam Nasser, against U.S. Bank National Association, JP Morgan Chase Bank, N.A. and Chase Home Finance LLC (collectively the "Defendants"); and upon the motion to dismiss filed by the Defendants (the "Motion to Dismiss"); and upon the record of the periodic hearings held from May 22, 2019 through August 26, 2020 (the "Hearings")[1]; and Kevin Butler (Counsel to Defendants), Counsel to Chapter 13 Trustee, Marium Nasser (Plaintiff/Debtor), Kamal Nasser (Plaintiff's Spouse), and Language Line Interpreters having appeared at the Hearings[2]; and after due deliberation and upon the entire record before the Court; it is

---

[1] The Court refrained from ruling on the Motion to Dismiss while the Plaintiff and Defendants attempted, albeit unsuccessfully, to resolve their differences through the negotiation of a loan modification within this Court's Loss Mitigation Program.

[2] At the time this Complaint was filed and the Motion to Dismiss argued, the Plaintiff was represented by counsel, Karamvir Dahiya. However, the Plaintiff has been appearing *pro se* since approximately November 2019.

1

**ORDERED**, that for the reasons set forth in the Memorandum below, the Motion to Dismiss is **GRANTED** and the Complaint is hereby **DISMISSED** in its entirety.

## INTRODUCTION

Plaintiff Mariam Nasser, a chapter 13 debtor, commenced an adversary proceeding (Adv. Pro. No. 17-01175-nhl, the "Adversary Proceeding") against U.S. Bank National Association, JP Morgan Chase Bank, N.A., and Chase Home Finance LLC seeking to hold the Defendants liable for alleged (i) breach of covenant of good faith and fair dealing, (ii) fraud, (iii) negligent misrepresentation, (iv) estoppel, (v) breach of contract, (vi) violation of the Fair Debt Collections Practices Act, (vii) breach of fiduciary duty, (viii) negligent lending, and (ix) violations under the New York Consumer Fraud and Deceptive Practices Act. The Plaintiff seeks damages and attorneys' fees and seeks to enjoin the Defendants from foreclosing on the Plaintiff's home. The Defendants filed a Motion to Dismiss on the grounds of (i) lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine, (ii) res judicata, and (iii) failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") made applicable to this Court through Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012. *See* Def's MTD, Adv. Pro. No. 17-01175, ECF No. 12.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by Order dated December 5, 2012. The following are the Court's findings of fact and conclusions of law to the extent required by Rule 52, as made applicable by Bankruptcy Rule 7052. However, in the event that the District Court concludes that this Court may not enter a final order and judgment

consistent with Article III of the United States Constitution, this Memorandum and Order may be treated as proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c).

## FACTS

### I.     Loan Background and Foreclosure Action

On April 3, 2006, the Plaintiff executed and delivered to Defendant JP Morgan Chase Bank, N.A. a note in the principal sum of $560,000, secured by a mortgage on the premises known as 40-45 72nd Street Woodside, New York 11377 (the "Property").[3] Compl. ¶ 7; Def's MTD, ECF No. 12, Ex. E. On June 24, 2009, the loan documents were tendered and transferred to Defendant Chase Home Finance LLC. *Id*. The loan documents were subsequently transferred to Defendant U.S. Bank National Association as Trustee for Bank of America Funding Corporation 2006-6 ("U.S. Bank"). *Id*. In May 2011, Chase Home Finance LLC merged with JP Morgan Chase Bank, N.A. (collectively referred to as "Chase"). Compl. ¶ 5. Chase is currently the servicer of this loan. *Id.*

In September 2013, U.S. Bank commenced a foreclosure action in New York State Supreme Court (the "State Court") against the Plaintiff and her husband (the "State Court Action"). *See* Def's MTD, ECF No. 12, Ex E. The Plaintiff failed to respond to the complaint and on March 10, 2016, a default judgment was filed and recorded in favor of U.S. Bank, which appointed a referee to ascertain and compute amounts due under the loan documents (the "Default Judgment" or "Order of Reference"). Def's MTD, ECF No. 12, Ex F. Defendant U.S. Bank has not, however, obtained a final judgment of foreclosure and sale. *See* Hrg Tr. 5/22/19, 13:7-12.

---

[3]  The Court finds that it may consider the documents attached to the Motion to Dismiss because the documents are integral to the causes of action, and "when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

## II.     Allegations

The gravamen of the Plaintiff's Complaint is that the Defendants improperly administered the Plaintiff's loan account, and wrongfully denied the Plaintiff a loan modification. For example, the Plaintiff alleges that upon execution of the loan documents in 2006, Defendant Chase told her that the mortgage payment would be fixed; however, by 2008, such payment had increased from $3,998.38 to $4,782. *See* Compl. ¶ 8. The Plaintiff also states that during this time, the Defendants misapplied payments and that "[e]scrow became the excuse for abuses of the servicer." *Id*.

In January 2010, in connection with a mortgage loan modification request, Defendant Chase offered the Plaintiff a Trial Period Plan ("TPP") as part of the Home Affordable Mortgage Program ("HAMP"), which contemplated monthly payments of $2,170. Compl. ¶ 9; Def's MTD, ECF No. 12, Ex. C. The Plaintiff alleges that she made the requisite payments under the TPP, "entitling her to a permanent loan modification under HAMP." Compl. ¶ 9.  However, on April 21, 2011, Defendant Chase denied the Plaintiff a loan modification based on her failure to provide requisite documents. Def's MTD, ECF No. 12, Ex. D. The Plaintiff asserts that she made payments to Defendant Chase through June 2011, at which point Defendant Chase stopped accepting payments. Compl. ¶ 10.

## DISCUSSION

### I.     Abstention

As an initial matter, the Defendants requested that the Court abstain from this Adversary Proceeding under the doctrines of mandatory and permissive abstention.

Under the doctrine of mandatory abstention, a court must abstain from a proceeding if:

> (1) a party to a proceeding files a timely motion to abstain; (2) the proceeding is based upon a state law claim or state law cause of action; (3) the proceeding is a non-core, but "related to" proceeding and does not arise under the Bankruptcy

Code; (4) there is no basis for federal jurisdiction other than 28 U.S.C. § 1334; and (5) an action is commenced and can be timely adjudicated in state court.

*In re Taub*, 413 B.R. 81, 88 (Bankr. E.D.N.Y. 2009); *see* 28 U.S.C. § 1334(c)(2).

"In determining whether to abstain, if the Court finds that any element of the test . . . has not been satisfied, then it must find that mandatory abstention is improper." *Smith v. McLeskey (In re Bay Vista of Virginia, Inc.)*, 394 B.R. 820, 833 (Bankr. E.D.Va. 2008).

Here, the Court finds mandatory abstention inappropriate. Procedurally, a motion to abstain should be advanced "by way of a separate motion . . . rather than . . . a Rule 12 motion to dismiss." *In re Groggel*, 305 B.R. 234, 237 (Bankr. W.D. Pa. 2004). Further, the fifth prong of the analysis is not satisfied when, as here, the issues before the state court and bankruptcy court are not the same. *In re Bay Vista of Virginia,* 394 B.R. at 843 ("Implicit in the requirement that there be a pending parallel proceeding in order to abstain is the concept that the state proceeding involve the *same issues* as the federal proceeding.") (emphasis added). Here, the State Court Action is a foreclosure action by Defendant U.S. Bank against the Plaintiff, whereas the Complaint before this Court includes discrete issues relating to the loan modification process and alleged misadministration of loan payments. *See Cox v. Hendrix,* No. 4:11CV558, 2011 WL 4572018, at *3 (E.D. Ark. Oct. 4, 2011) (finding mandatory abstention improper where the adversary proceeding included additional claims and causes of action not before the state court). Accordingly, mandatory abstention is not required.

Under the doctrine of permissive abstention, the Court may consider one or more of the following factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of [the court's] docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

*In re Exeter Holding, Ltd.*, No. 11–77954–ast, 2013 WL 1084548, at *3 (Bankr. E.D.N.Y. Mar. 14, 2013); *see* 28 U.S.C. § 1334(c)(1).

The movant bears the burden of proving that permissive abstention is appropriate. *In re Tronox*, 603 B.R. 712, 726 (Bankr. S.D.N.Y. 2019). "The factors largely ask the Court to balance the federal interest in efficient bankruptcy administration against the interest of comity between the state and federal courts." *Id.* Thus, this analysis is not rigid or mathematical, and the decision to permissively abstain is within the bankruptcy court's sound discretion. *Id.*; *see In re Abir*, No. 09 CV 2871(SJF), 2010 WL 1169929, at *7 (E.D.N.Y. Mar. 22, 2010). Moreover, this doctrine should be applied sparingly. *In re Lebenthal Holdings, LLC*, No. 18-01547 (MG), 2018 WL 3629900 (Bankr. S.D.N.Y. July 27, 2018).

The Court finds that the Defendants have not met their burden, and thus permissive abstention is not warranted. While it is true that many of the Plaintiff's claims raise state law questions, the allegations in this Adversary Proceeding are closely related to key issues in the Plaintiff's bankruptcy case. In particular, efforts to modify the Plaintiff's mortgage have been at the forefront of the bankruptcy case, and the parties spent over a year negotiating within the Court's Loss Mitigation Program. Further, as already discussed, while there is a pending State Court Action, this Complaint raises causes of action not before the State Court, weighing against permissive abstention. This Court also finds it significant that the coronavirus pandemic, which closed state courts for weeks and led to a moratorium on foreclosures, has created a massive

backlog of cases in State Court. *In re Village at Dadeland Assocs. LLC*, No. 12–1296–BKC–AJC–A, 2012 WL 3013935, at *3 (Bankr. S.D. Fla. July 23, 2012) (finding permissive abstention not warranted where the state court backlog was "too great," because the matter "could be much more expeditiously resolved in [bankruptcy court]"). Accordingly, the Court finds that permissive abstention is not warranted under these circumstances.

## II.     Rooker–Feldman Doctrine

The Rooker–Feldman doctrine limits federal subject matter jurisdiction by prohibiting lower federal courts from acting as courts of appeal of state court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005); *In re Richmond*, 513 B.R. 34, 39 (Bankr. E.D.N.Y. 2014). The Rooker–Feldman doctrine applies to cases "[1] brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the federal district court proceedings commenced and [4] inviting [federal] court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 281. Under Second Circuit law, the Rooker–Feldman doctrine is applicable to challenges to state court default judgments. *Shieh v. Flushing Branch, Chase Bank USA, N.A.*, No. 11–CV–5505 (CBA)(SMG), 2012 WL 2678932, at *5 (E.D.N.Y. July 6, 2012) ("[Rooker–Feldman] doctrine applies equally to challenges to state court default judgments.").

The Defendants assert that the Default Judgment obtained in the State Court Action requires the Court to dismiss the Complaint under the Rooker–Feldman doctrine. Def's MTD, ECF No. 12, at 6. The Plaintiff counters that this doctrine does not apply because Rooker–Feldman only applies to judgments from the highest court of the state, and the doctrine does not apply to default judgments. Pl's Opp., ECF No. 16, at 3-4.

The Rooker–Feldman doctrine is inapplicable here, but not for the reasons stated by the Plaintiff. It is clear from the case law that the Rooker–Feldman doctrine applies to judgments from lower state courts, and is equally applicable to default judgments. *In re Lake Charles Retail Dev. LLC*, 13–01477(NHL), 2014 WL 4948234, at *6 (Bankr. E.D.N.Y. Sept. 30, 2014) (applying the Rooker–Feldman doctrine to a judgment from a state trial court); *Shieh*, 2012 WL 2678932, at *5. However, the Complaint cannot be dismissed under this doctrine because the Plaintiff is not complaining of injuries caused by the Default Judgment, which resulted in the appointment of a referee. Rather, the gravamen of the Plaintiff's Complaint relates to alleged improprieties in connection with a loan modification denial, and improper administration of the Plaintiff's loan account. These alleged injuries were not caused by the Default Judgment. *See Graham v. Select Portfolio Servicing Inc.*, 156 F.Supp.3d 491, 508 (S.D.N.Y. 2016) ("The fraud [alleged] in [the Plaintiff's] loan modification claims is not a fraud that allegedly took place during the course of the foreclosure proceeding. . . [These claims] do not require re-litigating issues that the state court decided in the foreclosure proceeding."). Accordingly, the Complaint cannot be dismissed pursuant to the Rooker–Feldman doctrine.

### III.    12(b)(6) Standard

Under Rule 12(b)(6), made applicable by Bankruptcy Rule 7012, a plaintiff must plead sufficient facts that, when "accepted as true, [] state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint must allege enough facts to "nudge[] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Accordingly, the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). For purposes of reviewing a motion to dismiss for failure to state a claim, the Court accepts factual allegations in a complaint as true and draws all reasonable inferences in favor of the non-movant. *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007).

### A. <u>Res Judicata</u>

Res judicata is an affirmative defense that is most appropriately considered at the summary judgment stage. However, a court may dismiss a complaint pursuant to Rule 12(b)(6) based on res judicata if the defense is apparent on the face of the complaint. *See Rycoline Prods. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997).

"Res judicata, or claim preclusion, operates to prevent a party from re-litigating a claim after the claim has already been decided by a court of competent jurisdiction." *Charell v. Gonzalez (In re Gonzalez)*, 241 B.R. 67, 72 (S.D.N.Y.1999). Under New York law, res judicata requires a showing that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the party against whom res judicata is invoked or its privy; and (3) the claims asserted were or could have been asserted in the previous action." *In re Buckskin Realty Inc*., No. 15-01004, 2016 WL 5360750, at *6 (Bankr. E.D.N.Y. Sept. 23, 2016).

The Defendants argue that res judicata is applicable due to the Default Judgment obtained in State Court. Def's MTD, ECF No. 12, at 7–9. The Plaintiff counters that res judicata does not apply because the claims in this Complaint would have been counterclaims in State Court, and

thus the Plaintiff was not required to bring those claims due to New York's permissive counterclaim rule. Pl's Reply, ECF No. 16, at 5–6.

The Court finds that the Default Judgment does not have res judicata effect. Although res judicata is applicable to default judgments, it is generally inapplicable to interlocutory orders unless such order "makes a final disposition." *See Aiello v. City of Wilmington*, 470 F.Supp. 414, 419 (D. Del. 1979); *see also In re Associated Gas & Elec. Co.*, 149 F.2d 996 (2d Cir. 1945). Here, the default judgment obtained by Defendant U.S. Bank, as an Order of Reference, is an interlocutory order and is not a "final disposition" of the State Court Action. A referee must still compute amounts due under the note and mortgage, and such findings can be challenged by the State Court defendant. Further, the State Court plaintiff (i.e., U.S. Bank) must still obtain a final judgment of foreclosure of sale. *See* N.Y.C.P.L.R. § 4403; *Household Fin. Realty Corp. of N.Y. v. Claudio-Santiago,* 2016 NY Slip Op 50722 (N.Y. Sup. Ct. May, 6, 2016); *US Bank N.A. v. Flowers*, 128 A.D.3d 951, 952 (N.Y. App. Div. 2015) (stating that an order of reference is a "preliminary step in obtaining a judgment of foreclosure"); 78 New York Jurisprudence, Second Edition Mortgages § 635, Reference to Determine Amount Due. Here, the conclusion would be otherwise if the Defendant U.S. Bank had obtained a final judgment of foreclosure and sale. *See, e.g., Graham*, 156 F.Supp.3d at 507–08 (S.D.N.Y. 2016) (finding res judicata applicable to allegations in connection with a loan modification where creditor already obtained a final judgment of foreclosure); *SSJ Dev. of Sheepshead Bay I, LLC v. Amalgamated Bank*, 10 N.Y.S.3d 105, 108 (2015) (*"[A] judgment of foreclosure and sale* entered against a defendant is final as to all questions at issue between the parties, and concludes all matters of defense which were or might have been litigated in the foreclosure action.") (internal quotations omitted) (emphasis added). As

such, the Defendants have not persuaded this Court that the Default Judgment is a final judgment to be given preclusive effect.

### B. <u>Failure to State a Claim</u>

Although the Rooker–Feldman doctrine and res judicata are inapplicable, the Court finds that the claims in the Complaint should be dismissed pursuant to Rule 12(b)(6) because the causes of action are untimely and/or fail to state a claim for relief.

*i.     Timeliness*

Regarding timeliness, under Second Circuit law, "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). Timeliness is "material when testing the sufficiency of a pleading." *Id.* at 426; (citing Fed.R.Civ.P. 9(f)). In particular, the fourth through ninth causes of action are clearly untimely.

The Plaintiff's fourth cause of action for estoppel has a six-year statute of limitations. *See* N.Y. C.P.L.R. § 213(1); *Aleem v. Experience Hendrix, L.L.C.* 413 F.Supp.3d 251, 258 (S.D.N.Y. 2019). Here, the Plaintiff's allegations are based on alleged representations made by the Defendants in connection with the TPP process, which arguably occurred on or before April 21, 2011 (i.e., the date of the denial letter). *See* Compl. ¶¶ 9, 35–38; Def's MTD, ECF No. 12, Ex. E. Because that outside date is more than six years before the Complaint was filed on December 12, 2017, this cause of action is barred by the statute of limitations.

The Plaintiff's fifth cause of action is a breach of contract claim, which also has a six-year statute of limitations. N.Y. C.P.L.R. § 213(2). Under this claim, the Plaintiff alleges that the Defendants are liable for breach of contract for failing to provide the loan modification. Compl. ¶¶ 41–43. This cause of action is time barred because, as stated, the Plaintiff was denied the loan

modification on or before April 2011, which is more than six years before the instant Complaint was filed.

The Plaintiff's sixth cause of action, under the Fair Dept Collection Practices Act, 15 U.S.C. § 1692 et seq, has a one-year statute of limitations. 15 U.S.C. § 1692k(d). The allegations under this cause of action include that Defendant Chase collected unauthorized charges, fees, and expenses, and threatened to foreclose on the Plaintiff's home. Compl. ¶¶ 45–49. This cause of action is untimely as well because all of the aforementioned actions occurred between 2007 and the commencement of the foreclosure action in 2013, which is clearly more than one year before the instant Complaint was filed. *Id.* ¶¶ 5–10.

The seventh cause of action is for breach of fiduciary duty, which has a six-year statute of limitations because the claim is based on a theory of fraud. *See IDT Corp. v. Morgan Stanley Dean Witter & Co.,* 907 N.E.2d 268, 272 (2009). This cause of action alleges that the Defendant Chase's "overcharging of and misadministration of the escrow account constituted breaches of defendant's fiduciary duty to the Plaintiff." Compl. ¶ 55. Because the Complaint's allegations with respect to this alleged conduct occurred between 2007 and 2008, this claim is likewise untimely. *See id.* ¶ 8.

The Plaintiff's eighth cause of action for negligent lending has a statute of limitations of three years.[4] *See Universitas Education, LLC*, 15-cv-5643 (SAS), 2015 WL 9304551, at *3 (S.D.N.Y Dec. 21, 2015). Here, it is alleged that Defendant Chase "induced Plaintiff to enter into the mortgage transaction which culminated in the present foreclosure." Compl. ¶ 61. This allegation is clearly untimely as the note was executed in 2006, which is more than three years before the Complaint was filed. *Id.* ¶ 7.

---

[4] The Plaintiff incorrectly categorizes this cause of action as "Count IX." The Plaintiff inadvertently skipped Count XIII, and thus this is the eighth cause of action.

Pursuant to New York General Business Law section § 349, the Plaintiff's ninth cause of action has a statute of limitations of three years.[5] *See Parejas v. General Elec. Capital Servs., Inc.*, 10-CV-3348, 2011 WL 2635778, at *3 (E.D.N.Y. July 5, 2011). This claim, which includes allegations that the Defendants "inaccurately claim[ed] or market[ed] fraudulent promises regarding [a] loan modification" is untimely because such actions occurred on or before April 2011. Thus, this alleged conduct is barred as it occurred more than three years prior to the filing of the Complaint. Compl. ¶¶ 67-70.

    *ii.    Substance of Allegations*

Many of the causes of action, including all of those not time barred, do not plausibly state a claim for relief.

    *a.  Loan Modification Claims*

    i.    <u>Private Cause of Action Under HAMP</u>

The Plaintiff's loan modification allegations must fail because there is no private cause of action under HAMP. *See Davis v. Citibank, N.A.* 984 N.Y.S.2d 388 (N.Y. App. Div. 2014) (affirming decision to grant defendant's motion to dismiss breach of contract, estoppel, and fraud claims based on the defendant's alleged breach of a TPP agreement); *Jordan v. Chase Manhattan Bank*, No. 13 Civ. 9015, 2014 WL 3767010, at *7 (S.D.N.Y. July 31, 2014) ("The law is clear that HAMP 'does not create a private right of action for borrowers against loan servicers.'" (quoting *Wheeler v. Citigroup*, 938 F. Supp. 2d 466, 471 (S.D.N.Y. 2013))). The first, second, third, fourth, fifth, and ninth causes of action in the Complaint primarily seek to hold the Defendants liable for breaching the TPP by denying the Plaintiff a permanent loan modification. Accordingly, because these causes of action, grounded in a HAMP mortgage modification denial, are so intertwined with

---

[5]     The Plaintiff incorrectly categorizes this cause of action as "Count X." The Plaintiff inadvertently skipped Count XIII, and thus this is the ninth cause of action.

Defendants' alleged obligations under the HAMP TPP agreement, with the latter serving as the basis of her challenge, no claim will lie. *See Davis* 984 N.Y.S.2d at 392 (affirming decision to grant motion to dismiss where "the plaintiffs' claims . . . are intertwined with the defendants' alleged obligations under the HAMP").

      ii.      <u>No Entitlement to Loan Modification</u>

New York courts have recognized that "a HAMP modification trial is 'not an agreement for the binding obligations of the parties going forward because it is 'merely a trial arrangement.'" *US. Bank Nat. Ass'n v. Martinez*, 54 Misc.3d 1209(A), 52 N.Y.S.3d 248 (Kings County Supreme Court, Oct. 31, 2016) (citing *Wells Fargo Bank, N.A. v. Meyers,* 108 A.D.3d 9, 21 (N.Y. App. Div. 2013)). Accordingly, "the failure to issue a final HAMP modification does not give rise to a legal claim, as a matter of law." *Gahfi v. Wells Fargo Bank, N.A.,* 981 N.Y.S.2d 635 (Kings County Supreme Court, Nov. 13, 2013). Here, the Plaintiff alleges that she was "entitl[ed] . . . to a permanent loan modification under HAMP" because she completed trial payments, which clearly contradicts the relevant case law in New York. *See* Compl. ¶ 9. Accordingly, the Plaintiff's causes of action based on the loan modification denial are also subject to dismissal.

    *b. Breach of Covenant of Good Faith and Fair Dealing*

To establish a claim for good faith and fair dealing, the "(1) defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant must breach that duty; and (3) the breach of duty must proximately cause plaintiff's damages." *Harte v. Ocwen Fin. Corp.*, No. 13–CV–5410 (MKB), 2014 WL 4677120, at *9 (E.D.N.Y. Sept. 19, 2014). This cause of action has a statute of limitations of six years. Although part of this cause of action relates to the loan modification denial, which is improper for the reasons previously stated, the Plaintiff also alleges that the Defendant "undert[ook] actions to foreclose Plaintiff from her home without providing her

14

with an opportunity to prevent the improper foreclosure, thereby rendering her and her family homeless." Compl. ¶ 13. The state court foreclosure was not initiated until 2013 and thus this allegation falls within the six-year statute of limitations.

It is true that some courts have found that this claim may succeed where the "defendant [told] the plaintiff, *inter alia*, that during the processing of the loan modification paperwork the defendant would abstain from foreclosing" since this representation may "create[] an obligation on defendant to actually stay foreclosure." *M&B Properties 3 Bushey Lane VT LLC v. CWCapital Asset Mgmt. LLC*, 2:18-CV-4187 (PKC) (RER), 2019 WL 4805149, at *9 (E.D.N.Y. Sep. 30, 2019) (quoting *Robinson v. Deutsche Bank Nat. Tr. Co.*, No. 52-CV-590, 2013 WL 1452933, at *12 (E.D.N.C. Apr. 9, 2013)). However, the Plaintiff's claim fails because on April 21, 2011, Chase sent a letter to the Plaintiff denying her a loan modification. Def's MTD, ECF No. 12, Ex. D ("We are unable to offer you a modification through the federal Home Affordable Modification Program (HAMP) or any Chase modification program."). Thus, the duty highlighted in *M&B Properties* is not applicable, and Chase had reason to foreclose given that the Plaintiff defaulted under the terms of loan documents. *See* Def's MTD, ECF No. 12, Ex. E; *Costigan v. CitiMortgage, Inc.*, No. 10 Civ. 8776(SAS), 2011 WL 3370397, at *8 (S.D.N.Y. Aug. 2, 2011) (dismissing a breach of the covenant of good faith and fair dealing claim because the borrower "breached the express terms of the original loan documents by failing to pay his mortgage, and [thus] defendants therefore had reason to initiate foreclosure proceedings."). Accordingly, this claim is dismissed for failure to state a claim.

 c. *Fraud and Negligent Misrepresentation*.

Fraud and negligent misrepresentation claims must comply with the heightened pleading requirement of Rule 9(b), *Costigan*, 2011 WL 3370397, at *8 & n.100, and in order to comply

with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A*. 459 F.3d 273, 290 (2d Cir. 2006) (internal quotations omitted). These causes of action have a six-year statute of limitations. N.Y.C.P.L.R. § 213(8); *Viania v. Zimmer*, 2:17-cv-1641 (ADS)(AYS), 2017 WL 5714725, at *3 (E.D.N.Y. Nov. 27, 2017). While the allegations with respect to the loan modification denial are time barred, these causes of action also include allegations that the Defendants told the Plaintiff "that she need not worry while the loan modification was being processed, and that her house was not being foreclosed upon." Compl. ¶ 17. Because the State Court Action commenced in 2013, these allegations are not time barred.

However, the Plaintiff's allegations with respect to these causes of action do not include the requisite information detailed above, such as providing the identity of the speaker, and stating where and when the statements were made. Accordingly, these claims are dismissed for failure to comply with the pleading requirements of Rule 9(b).

## CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss is **GRANTED**, and the Plaintiff's Complaint is **DISMISSED** in its entirety



**Dated: October 8, 2020**  
**Brooklyn, New York**

_____  
**Nancy Hershey Lord**  
**United States Bankruptcy Judge**